TRIAD DEVELOPMENT/ALTA GLYNE, INC.; Dominion Homes, Inc.; Dominion Homes of Kentucky, GP, LLC; Dominion Homes of Kentucky, Ltd.; Louisville and Jefferson County Planning Commission; Louisville and Jefferson County Department of Public Works; and the Louisville and Jefferson County Metropolitan Sewer District Appellants/Cross–Appellees,

v.

Rita C. GELLHAUS; Winston L. Shelton; and Laura S. Hall Appellees/Cross–Appellants.

No. 2002–SC–0733–DG, 2003–SC–0398–DG.

Supreme Court of Kentucky.

Sept. 23, 2004.

As Modified on Denial of Rehearing Dec. 16, 2004.

---

**44**

Dustin E. Meek, Brian F. Haara, Tachau Maddox Hovious & Dickens PLC, Paul B. Whitty, J. Mark Grundy, Ann Toni Kereiakes, Greenebaum Doll & McDonald PLLC, B. Frank Radmacher III, Asst. Jefferson County Attorney, Deborah A Bilitski, Office of Jefferson County Attorney, John H. Dwyer, Jr., Nancy J. Schook, Laurence Zielke, Pedley Zielke & Gordinier PLLC, Louisville, Counsel for Appellant/Cross–Appellees.

Patricia A. Abell, Richard M. Trautwein, Trautwein & Associates, Louisville, Counsel for Appellees/Cross–Appellants.

Marshall P. Eldred, Jr., Rebecca Anne Wood, Frost Brown Todd LLC, Louisville, Counsel for Amicus Curiae: the Homebuilders Ass'n of Louiville, Inc.

Opinion of the Court by Justice WINTERSHEIMER.

This appeal and cross-appeal are from an opinion of the Court of Appeals which affirms in part and reverses and remands in part a circuit court decision that dismissed an appeal from the Jefferson County Planning Commission and a civil complaint on the constitutionality of that decision.

The principal issues are whether the statutory appeal was properly dismissed because it was not timely, and whether the so-called constitutional appeal was properly dismissed.

The controversy in this matter involves a 117–acre tract of land located near Billtown Road and the Gene Snyder Freeway. Triad Development has made numerous attempts to obtain approval of a subdivision plan through the Planning Commission, however, neighboring landowners have been protesting all of those plans. The litigation concerning the property began in 1994 and has continued until this time.

Gellhaus and her associates are adjacent property owners who contend that their real estate will be adversely affected by the subdivision development in that it will have an adverse environmental impact on their properties because runoff from the development will flow onto their properties and into their lakes and streams. They also argue that they have a constitutional right to an appeal based on due process principles.

In 1992, Triad submitted an "innovative" subdivision plan to the Planning Commission which was approved on April 21, 1994.

The adjacent landowners appealed to circuit court within 30 days from the Planning Commission's approval of this "innovative" plan although it was conditioned upon various binding elements. In July 1999, Triad conditionally sold the property to Dominion Homes and proposed a substitute development plan which was a "standard" plan rather than the "innovative" plan. The Commission approved the standard plan on August 19, 1999 by a vote. Gellhaus and her associates did not appeal the approval of that voted plan within the thirty days provided by KRS 100.347(2).

The development of the land could not begin until the Metropolitan Sewer District approved a soil and sedimentation control plan and until the County Works Director approved the construction plan. MSD approved the plan on May 11, 2000, and the County Works Director approved the construction plan on May 18, 2000. Gellhaus and others filed their appeal and civil complaint in the Jefferson Circuit Court on June 17, 2000. The appeal and civil complaint alleged that the final approval of the construction plan was arbitrary and that they had been denied due process of law.

The developers sought to dismiss the appeal and civil complaint for lack of jurisdiction pursuant to CR 12.02(a). The developers argued that the circuit court did not have jurisdiction to hear the appeal because it was not filed within 30 days of August 19, 1999, the date the Planning Commission approved the subdivision. In addition, the developers maintained that the civil complaint was indistinguishable from the appeal because it claimed arbitrary approval of the construction plan and a denial of due process, issues which had been raised in the appeal of the administrative decision. After a hearing, the circuit judge granted the motion to dismiss by the developers. The circuit judge

stated that he was without jurisdiction to consider the appeal and that the civil complaint stated the same grounds as the appeal. Gellhaus and others appealed to the Court of Appeals.

A panel of the Court of Appeals was sharply divided with Judge Buckingham writing a lead opinion which was joined by Judge Schroder who concurred in result only. Judge Knopf agreed with the lead opinion that the latest complaint by the neighbors was simply untimely and properly dismissed. He dissented from the decision, however, on the grounds that there was no statutory authority for the civil complaint. Judge Knopf believed that any possible relief would have been through a declaratory judgment action. In essence, the decision by the Court of Appeals was that the trial judge properly dismissed as untimely the statutory appeal, but he erred by dismissing the constitutional appeal. This Court accepted discretionary review.

## I. Final Action

We have considered in great detail all the legal authorities submitted by the parties. We will cite only those cases that are directly pertinent to the questions at hand.

KRS 100.347(2) states in pertinent part that "All final actions which have not been appealed within thirty (30) days shall not be subject to judicial review." KRS 100.347(5) states in relevant part that "For purposes of this chapter, final action shall be deemed to have occurred on the calendar date when the vote is taken to approve or disapprove the matter pending before the body." *See also Leslie v. City of Henderson,* Ky.App., 797 S.W.2d 718 (1990).

We must agree with the Court of Appeals that KRS 100.347(5) applies to actions of the Planning Commission as well as legislative bodies. The word "body" as

used in the statute refers to the Planning Commission, as well as to legislative bodies, including county and city governments. Consequently, KRS 100.347(5) relates to KRS 100.347(2), as well as KRS 100.347(3).

Gellhaus and others argue vigorously that the Commission only conditionally voted to approve the plan and then referred it to MSD and the Works Department. They assert that these agencies were required to return the plans to the Commission for additional final approval.

We must acknowledge that there is an initial problem with the nomenclature used by the Planning Commission and with the labeling of particular actions taken by it. A simple reading of the statute would indicate that there is nothing to suggest that the Commission's final approval would be conditional. However, the statute is clear that final action is deemed to occur when a vote is taken on the subdivision plat, conditional, preliminary or otherwise. We must take notice that in practice, all plats, when initially submitted, are referred to as preliminary. If such a plat is preliminarily approved, the developer can then seek to proceed with the development which, again, includes the submission of plans to all relevant agencies to demonstrate compliance with the conditions placed on the approval of the preliminary plat. The so-called preliminary plat is crucial in the process because the final plat must comply with it.

The final approval of the amended subdivision plan is a reasonably foreseeable consequence of granting the so-called tentative approval. Certainly, there cannot be two final actions for the purposes of KRS 100.347. Consequently, the right to review or appeal must accrue in relation to the first date when the vote is taken. Any other interpretation would permit an aggrieved party to take no action while the builder and the community proceed in reli-

ance of the original approval, and then later, seek appeal of the granting of the so-called final approval.

Here, the final action occurred on August 19, 1999, the date when the vote was taken to approve the subdivision plan. The matter was not subject to judicial review because Gellhaus and others did not appeal within the thirty days from that date as provided by the statute. Only one vote was taken by the Planning Commission and that was on August 19, 1999. The Planning Commission approved the plan subject to certain conditions. It delegated to the MSD and the County Works Department the responsibility for evaluating the drainage and construction plans. On May 11, 2000, MSD approved the compliance with the plans and on May 18, the County Works Department did likewise. No subsequent vote was taken by the Planning Commission.

We can find no authority that supports the argument that ministerial approval of construction plans during and after the voted approval of a subdivision plan tolls or extends the appeal time provided in KRS 100.347(2). In fact, the holding in *Spainhoward v. Henderson, Henderson County Bd. of Zoning Adjustment*, Ky.App., 7 S.W.3d 396 (1999), is that the vote of the administrative body is the final action from which an appeal must be taken. *City of Lyndon v. Proud*, Ky.App., 898 S.W.2d 534 (1995), holds that final action was taken on the date a resolution was passed by a vote and not on the date when a subsequent ministerial action was completed. We conclude that the holdings of these cases are correct and we reaffirm them.

## II.  Right of Appeal

The approval by the Planning Commission of the plat in this case was based

on the satisfaction of conditions set out in its initial approval. That decision required ministerial approval by MSD of a soil and sedimentation plan and the approval by the County Public Works Director of a construction plan. Both agencies satisfied that requirement. The Planning Commission did not undertake an independent review of these findings, rather it deferred to the expertise of these agencies to ensure compliance with its conditions.

It could be argued that there is an apparent division in the law regarding the inherent right to review orders from administrative agencies. It has been held that there is an inherent right of appeal from orders of administrative agencies regardless of whether there is an explicit right to appeal because an agency is prohibited by Section Two of the Kentucky Constitution from acting arbitrarily. *See American Beauty Homes Corp. v. Louisville & Jefferson County Planning & Zoning Comm'n*, Ky., 379 S.W.2d 450 (1964).

■ On the other hand, it has been repeatedly held that an appeal from an administrative decision is a matter of legislative grace and not a right. Thus, the failure to follow the statutory guidelines for such an appeal is fatal. A person seeking review of administrative decisions must strictly follow the applicable procedures. *See Taylor v. Duke*, Ky.App., 896 S.W.2d 618 (1995).

*American Beauty Homes Corp., supra,* does not recognize a constitutional appeal or an independent claim resulting from administrative actions in addition to a statutory appeal. Instead, that case simply recognized that the courts of Kentucky have inherent jurisdiction to review decisions of administrative agencies and legislative bodies for arbitrariness. However, when the right of appeal or the trial court's jurisdiction is codified as a statutory procedure, as it is in KRS 100.347, then the parties are required to strictly follow those procedures. Here, Gellhaus and others did not strictly comply with the statute and the circuit judge properly dismissed their appeal.

Individuals and others who may be aggrieved by the subordinate ministerial decisions cannot appeal pursuant to the Planning Commission statute, KRS 100.347. A careful examination of the statutes does not indicate any authority for an appeal from the decisions of entities such as the MSD or the Public Works Director. Apparently, the only relief available may be through a declaratory judgment action authorized by KRS 418.040 which allows a party to seek a declaration of rights when an actual or judicable controversy exists. *Cf. Greater Cincinnati Marine Service, Inc. v. City of Ludlow*, Ky., 602 S.W.2d 427 (1980). The parties here did not seek a declaratory judgment.

It is of interest to note that KRS 76.180(2) authorizes the MSD to conduct procedures for the hearing, review and resolution of complaints by citizens and other grievances. Decisions by the Hearing Officer may be accepted or rejected by the Board of MSD. However, the approval of a drainage plan is not the type of action by which the statute allows review.

Section 115 of the Kentucky Constitution provides in pertinent part that in all civil and criminal cases, there shall be allowed as a matter of right, at least one appeal to another court. Here, that concept has been fully satisfied because the aggrieved parties have litigated this matter from circuit court to the Court of Appeals and now to the Supreme Court. The requirement of the constitution has been exhausted.

It is the decision of this Court that the opinion of the Court of Appeals is affirmed insofar as it denies judicial review and is

reversed in regard to the constitutional claim of an inherent right of appeal. The final action of a planning commission in this situation is determined on the date of the vote to approve the development plan. An appeal must be taken within thirty days from that date. Subsequent ministerial actions taken pursuant to the vote approval do not extend the statute of limitations.

All concur except KELLER, J., who dissents by separate opinion.

Dissenting opinion by Justice KELLER.

Rita C. Gellhaus, Winston Shelton, and Laura Hall ("Homeowners") want to challenge by appeal to the circuit court the soil and sedimentation control plan for the Billtown Farms subdivision in Jefferson County as finally approved by the Louisville and Jefferson County Planning Commission ("Planning Commission" or "Commission"). KRS 100.347(2) requires that this challenge be made within thirty days of the Planning Commission's "final action." The majority opinion believes that the "final action" from which the Homeowners should have appealed occurred on August 19, 1999 when the Planning Commission approved the standard subdivision plan, *subject to fifteen conditions.* Because one of those conditions was that the Louisville and Jefferson County Metropolitan Sewer District ("MSD") devise a soil and sedimentation control plan ("Soil Plan") for the Commission's approval and because MSD's Soil Plan was later approved by the Director of the Louisville and Jefferson

County Department of Public Works ("Director") *on behalf of the Commission,* I dissent for the reason that I believe the appropriate "final action" from which this appeal should have been taken occurred on May 18, 2000, when the Director, *on behalf of the Commission,* approved MSD's Soil Plan—to hold otherwise denies the Homeowners due process of law.

The majority opinion creates a catch–22 for the Homeowners by denying them the right to appeal the actions by MSD and the Director (when the contents of the Soil Plan are known and the Homeowners have a claim) and by requiring them instead to appeal from the Commission's first approval of the subdivision plan (when the Soil Plan does not exist and the claim is not ripe). In effect, the majority prevents judicial review of the Soil Plan.

The majority relies on the 1988 amendment to KRS 100.347 where the words "final action" were defined as the "date when the vote is taken to approve or disapprove the matter before the body."[1] In using the words "final action," the Legislature was primarily concerned with preventing premature challenges that would or could be extinguished by subsequent changes or actions by the body.[2] But the majority rejects the characterization of the Director's approval as a "final action" because it is not a "vote."

In adopting this strict interpretation, the majority is in effect insulating the Planning Commission's decisions from judicial review by preventing the Homeowners

---

1. KRS 100.347(5).

2. *Leslie v. City of Henderson,* Ky.App., 797 S.W.2d 718, 720 (1990) ("Accordingly, we hold that the 'final action' in the present case was on October 11, 1988, when the ordinance was given its second reading and final passage. Hence appellant's appeal to the circuit court was timely. With regard to judicial economy, interpreting the statute otherwise

could lead to an unsound result. It is possible that one could appeal from the initial zoning change decision and have the matter heard, only to find that the ordinance effecting the change did not pass, rendering the circuit court's action for naught. We do not believe the legislature intended such a result.").

from challenging any delegable action, regardless of the impact or magnitude, which occurred after the approval of the initial plan on August 19, 1999. Time and again, this Court and its predecessor have refused to adopt a strict literal construction of a statute if it would lead to an unreasonable or absurd result.[3] Requiring a party to appeal before the matter is final is unreasonable, absurd, and clearly contrary to KRS 100.347(2) whose primary purpose is to prevent premature appeals of the Planning Commission's interlocutory decisions.

One point where I do agree with the majority is that "there cannot be two final actions for the purpose of KRS 100.347."[4] But I believe the "final action" depends on the particular matter being appealed. In this situation, I had hoped the members of this Court would have recognized the problem created by requiring appeals from the Planning Commission's August 19, 1999 approval—one could appeal from this approval of the initial plan, only to find the matter had been satisfactorily resolved after MSD and the Director became involved. And since the subdivision plan approved in August contained fifteen conditions (items that were not final or even developed at that time), the opposite also holds true—one who did not appeal the initial plan would find that the final plan contained objectionable items but that the time to appeal had run before the appealable matter had become part of the subdivision plan. The majority's interpretation works if all "subordinate ministerial decisions" are made within thirty days of the Commission's initial approval, thus theoretically allowing time for appeal. But in this case, the "subordinate ministerial decisions" from which the Homeowners appeal occurred almost a year later.

I would also point out that neither the initial plan nor the final plan has been filed in the record, despite the Homeowners' request to the Planning Commission. And I am hesitant to join the majority without comparing the specifications on soil and sedimentation control in the initial subdivision plan approved on August 19, 1999 with the final subdivision/construction plan approved on May 18, 2000. Without the benefit of the "before" and "after" subdivision plans and because the case is before us on an appeal of a motion to dismiss, I believe that the appropriate appellate review requires the Court to make an evaluation that assumes the allegations in the Homeowners' complaint are true.[5]

According to the complaint, the initial plan approved by the Planning Commission on August 19, 1999 did not describe a soil and sedimentation control plan, but assigned the task to MSD through conditions nine and fourteen:

9. A soil erosion and sedimentation control plan shall be developed and implemented in accordance with the Metropolitan Sewer District and the USDA Soil Conservation Service recommendations. Documentation of the Metropolitan Sewer District's approval of the plan shall be submitted to the Planning Commission prior to grading and construction activities.

---

3. See, e.g., Commonwealth v. White, Ky., 3 S.W.3d 353 (1999); McElroy v. Taylor, Ky., 977 S.W.2d 929 (1998); Bailey v. Reeves, Ky., 662 S.W.2d 832 (1984); Ky. Mountain Coal Co. v. Witt, Ky., 358 S.W.2d 517 (1962); Dept. of Revenue v. Greyhound, Ky., 321 S.W.2d 60 (1959).

4. Triad Development/Alta Glyne, Inc. v. Gellhaus, Ky., 150 S.W.3d 43, 46, 2004 WL 2127277 (2004).

5. La Vielle v. Seay, Ky., 412 S.W.2d 587 (1966); James v. Wilson, Ky.App., 95 S.W.3d 875 (2002).

14. The Woolpert Report entitled "Erosion Prevention and Sediment Control for the Alta Glyne Development, Jeffersontown, Kentucky" dated August 1998 and originally submitted for Docket 10–46–92 and resubmitted for 10–20–99 shall be updated to reflect the current approved plan and executed according to its recommendations. A copy of the revised report shall be submitted to MSD prior to construction plan approval.

In accordance with condition nine, MSD devised (by out-sourcing the job to PDR Engineers, Inc.) and approved a soil and sedimentation control plan, which the Director approved on behalf of the Planning Commission through his delegated power—the Metropolitan Subdivision Regulations provide that once MSD approves the plan, "the Director of Works shall take action on behalf of the Commission" to approve or disapprove the plan. I believe that the Director's approval[6] was the "final action" by the Planning Commission and that the Homeowners filed a timely appeal; thus I would reverse the Court of Appeals and remand the case to the circuit court for resolution on the merits.

---

**6.** Although it is questionable whether the Planning Commission may properly delegate to the Director such unrestricted authority, this issue is not before us. If such delegation is not proper, then after MSD and the Director recommended or approved a soil erosion and sedimentation control plan, the plan would properly go back before the Planning Commission for its final approval and vote.