William Montfort HELM, Appellant,

v.

CITIZENS TO PROTECT THE PROSPECT AREA, INC. ("COPPA"); John Kington; City of Prospect; and Prospect City Council, Appellees,

and

CITY OF PROSPECT, Appellant,

v.

COMMITTEE TO PROTECT THE PROSPECT AREA, INC. ("COPPA"); John Kington; and Prospect City Council, Appellees,

and

CITY OF PROSPECT, Cross–Appellant,

v.

William Montfort HELM, Cross–Appellee.

Nos. 92–CA–002774–MR, 92–CA–003008–MR, 92–CA–003009–MR.

Court of Appeals of Kentucky.

Oct. 29, 1993.

Victor B. Maddox, Maureen P. Taylor, Brown, Todd & Heyburn, Louisville, for William Montfort Helm.

Walter L. Cato, Jr., Louisville, for City of Prospect.

Bill V. Seiller, Michael C. Bratcher, Stiller & Handmaker, Louisville, for Citizens to Protect the Prospect Area, Inc.; John Kington; and Prospect City Council.

Before JOHNSON, MILLER and STUMBO, JJ.

STUMBO, Judge:

These appeals arise from a zoning map amendment. The property involved is owned

by Appellant, William Montfort Helm (hereinafter "Helm"), and he wants to commercially develop it. The Louisville and Jefferson County Planning Commission (hereinafter "Planning Commission"), which is not a party to this appeal, approved the proposed development. Then, Appellee, Prospect City Council (hereinafter "Council"), enacted an ordinance implementing the necessary map changes. Appellees, Citizens to Protect the Prospect Area, Inc., and John Kington (hereinafter "COPPA," and "Kington," respectively) appealed to the Jefferson Circuit Court. After the appeal was filed, and as a result of the general election, the Council changed its position arguing that its own ordinance was invalid. Appellant, City of Prospect (hereinafter "City") continues to assert the ordinance's validity. The circuit court, by way of summary judgment, declared the ordinance invalid. This appeal followed, and after reviewing the record and the law, we must affirm.

On September 12, 1991, Helm filed an application with the Planning Commission for the requested zoning changes.[1] Thereafter, the Planning Commission held an extensive public hearing on October 30, 1991, which was attended by COPPA, Kington, and others. The Planning Commission voted on November 7, 1991 (Thursday), to recommend the zoning changes to the Council. COPPA, and Kington, and others were again present. The next day, November 8, 1991 (Friday), the Planning Commission hand-delivered notice of its action to the City Attorney of the City, along with the "unofficial minutes" of the Planning Commission's November 7, 1991, meeting. Also on November 8, the City Clerk for the City, upon oral notice from the City Attorney of the receipt of the notice from the Planning Commission, mailed out the required notices of the first reading of the ordinance enacting the required zoning changes, which was scheduled for the next regular meeting of the Council on November 18, 1991 (Monday). On November 11, 1991 (Monday, and a holiday, Veteran's Day), the City Attorney delivered the "unofficial minutes" to the City's Mayor at her home.

Then, on November 12, 1991 (Tuesday), the Mayor delivered the "unofficial minutes" to the City Clerk. Also on November 12, COPPA received its copy of the notice mailed on November 8. COPPA filed a response to the notice on November 15, 1991 (Friday). Therein, several points were raised, including the other appeal, which was then before this Court; a request for a continuance based upon the short time available to respond to the notice; the proposed tender of additional evidence; and a request for a public hearing in a place large enough to accommodate the expected crowd. The Council met as scheduled on November 18, 1991 (Monday), and the proposed ordinance was given its first reading. Additionally, a special meeting of the Council for the second reading of the ordinance was scheduled for November 25, 1991 (Monday). In the meantime, the Planning Commission met on November 21, 1991 (Thursday) and approved the "unofficial minutes," after certain corrections were made. The City Clerk received the Planning Commission minutes on November 25, 1991. The Council, meeting later that day, enacted the ordinance after its second reading.

As noted, the matter was appealed to the circuit court. In granting summary judgment, the circuit court found the ordinance defective based upon improper notice, and because the Council acted prior to receiving the Planning Commission's minutes.

Both Helm and the City appealed. The City also cross-appealed against Helm. Any additional facts necessary to our analysis will be set out in the context of our discussion of the issues.

■ Although there are several issues presented on appeal, we need only address one of the substantive issues to resolve the appeal. The issue involves the question of the propriety of the Council acting before it received the Planning Commission's minutes. The starting point for our analysis is § 155.-02(J) of the ordinances of the City, which provides, in pertinent part:

1. We are aware there is another case pending before the Kentucky Supreme Court, on motion for discretionary review, involving the same property, but it does not appear, at this time, that it will have any effect on this appeal.

Decisions shall be based on the Planning Commission *public record,* the staff report of the Planning Commission, the arguments at the Planning Commission public hearing, any motions and determinations made thereon, any additional evidence made a part of the official record of the city and any public hearings held by the City Council. (Emphasis added.)

The key words are "public record." Specifically, the question is whether the "unofficial minutes" of the Planning Commission are its public record. We hold that they are not. In fact, "unofficial minutes" is a bit of an oxymoron, since a body's minutes do not have any legal existence until they are actually adopted or approved. Thus, since the minutes do not exist until approved, "unofficial minutes" cannot constitute a "public record." Our decision is buttressed by the Planning Commission's Administrative Policy § 9.01.04, which defines as a public records "approved minutes."

As a result, it was incumbent upon the Council to wait until they had received the Planning Commission's minutes before they made any attempt to decide whether to adopt the ordinance. Since the minutes were not adopted until November 21, 1991, and not received until November 25, 1991, the Council jumped the gun. Consequently, the ordinance is void. *See Glazier v. City of Newport,* 132 Ky. 181, 187, 116 S.W. 262 (1909); *see also Farnsley v. Henderson,* Ky., 240 S.W.2d 82, 83–84 (1951), which stresses the importance of the first reading of an ordinance beyond the mere giving of notice, since it constitutes part of the whole chain of events necessary to the passage of an ordinance. (At issue in *Farnsley* was the question of whether an amendment was of such a material, or substantial, nature as to make the amended ordinance a "new" ordinance requiring two readings in its own right).

In an effort to avoid this result, Helm and the City argue that the ordinance should be upheld, since the minutes were received before the "decision" of the Council was actually made at the second reading. We reject such a narrow view of "decision." An ordinary definition of "decision" encompasses more than the final vote on the matter.

Rather, "decision" includes the whole process of making the choice presented, which in this instance includes everything from the first instance the City is notified of the Planning Commission's action, through the first and second reading, and ending with the actual vote. Therefore, we are not persuaded that the ordinance can be upheld since the decision regarding it was commenced prior to receipt of the Planning Commission's minutes.

As a final effort to prevent the ordinance from being voided, Helm and the City urge us to adopt a rule of substantial compliance for local legislative bodies enacting zoning ordinances. They particularly cite *Minton v. Fiscal Court of Jefferson County,* Ky.App., 850 S.W.2d 52 (1992), which involved application of KRS 100.182 (statute directing substantial compliance rule in certain zoning situations) to the notice requirements before the Planning Commission on a map amendment application.

■ We reject such an argument. While the substantial compliance rule has its place in administrative law, it has no place in the enactment of ordinances by local legislative bodies. A local legislative body to enact a valid ordinance must observe all legal requirements, including those they impose upon themselves. *See Glazier, supra.* Since the Council failed to do so, the ordinance is void.

As a result of our decision, we need not address the notice issue raised by the parties. Nor need we reach the question of whether it, too, is subject to a substantial compliance rule.

We do need to briefly address the standing issue. The circuit court's analysis of standing is adequate, and adopted as if set out herein in full. *See also Rose v. Council for Better Education, Inc.,* Ky. 790 S.W.2d 186, 202 (1989).

For the reasons set forth above, we affirm the judgment of the Jefferson Circuit Court.

All concur.